UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

LYMAN HOPKINS,

            Plaintiffs,

v.

TRENTON BOARD OF EDUCATION, et al.

            Defendant.

Civil Action No.: 17-cv-3232 (PGS)

MEMORANDUM AND ORDER

SHERIDAN, U.S.D.J.

This matter comes before this Court on Defendants' motion to dismiss Plaintiff's second amended complaint. [ECF No. 24].

### Facts and Procedural History

This case returns to the Court for the third time. Plaintiff filed his original complaint on May 8, 2017. After screening the initial complaint, the Court granted Plaintiff's application for *in forma pauperis*, and allowed him to submit a new complaint that complied with Fed. R. Civ. P. 8(a). (ECF No. 5). An amended complaint was then filed on September 6, 2017, after Plaintiff's motion to reopen the case was denied. [ECF No. 12]. Defendant then filed a motion to dismiss the amended complaint on September 27, 2017 which was granted by this Court on November 7, 2017. [ECF No. 19]. Plaintiff was again allowed to amend his complaint. He filed a second amended complaint on December 4, 2017. On January 2, 2018, Defendant filed a motion to dismiss this second amended complaint which is now before this Court. [ECF No. 24].

Mr. Hopkins alleges that his complaint sets forth a plausible cause of action because he obtained documents from the Trenton Board of Education showing disparate treatment. Some of these documents are attached to the Complaint; but having reviewed them, I do not see their relevance.

1

Plaintiff, Lyman S. Hopkins alleges disparate treatment by Defendant Trenton Board of Education, based on its failure to hire him as a Spanish teacher. Plaintiff, a New Jersey-certified Spanish teacher, is a sixty-year old African American man, who has been physically disabled since 2010. (Amend. Compl. at ¶ 10). On February 19, 2016, Plaintiff applied for a position as a Spanish teacher at "Trenton P.S.[1]" (hereinafter Trenton Public Schools) and was later interviewed on March 10, 2016. (*Id.* at ¶ 26-28). Plaintiff arrived to the interview carrying a laptop computer, canvas bag with teaching materials, utilizing a cane to assist walking. (Id. ¶ 33). During his interview with Defendants Madeline Roman and Michael Pettola, it was explained to Plaintiff that he should consider a substitute teacher position with Trenton Public School – a position he did not want. (*Id.* at ¶ 33). Thereafter, Plaintiff received a post-interview e-mail from Defendant that stated:

> this letter is to inform you that you were not selected for the position. Please do not allow this determination to preclude you from applying for open positions for which you qualify. We sincerely regret that the great volume of applications we receive makes it impossible for us to provide you with a more personal response. Again, thank you for your interest in the Trenton Public School District and we wish you success with your future endeavors.

(*Id.* at ¶ 35).

On August 1, 2016, Plaintiff again submitted an application for another position as a Spanish teacher at Trenton Public Schools and received an interview on August 3, 2016. (*Id.* at ¶ 37). According to the Complaint, "[a]bout 100 percent of several school district logo attired personnel at August 2016 Trenton Public School Job Fair reception tables are Black." (*Id.* at ¶ 41). However, Plaintiff claims there were no "Black interviewers" at any of the candidate interview tables. (*Id.* at ¶ 42). During his interview with Defendant Sandra Iturbides, Trenton Public School World Languages Supervisor, it was again suggested that he consider a substitute teacher position

---

[1] In his Complaint, Plaintiff names Trenton Board of Education as a Defendant. However, throughout the Complaint Plaintiff refers to Defendant interchangeably as Trenton Board of Education and as Trenton P.S., which has not been named as a defendant.

with Trenton Public School. (*Id.* at ¶¶ 45-46). Plaintiff mentions that after the August 2016 interview, he was sitting outside of "Trenton P.S. Board Room" making a phone call regarding another interview when "Sandra Iturbides and the technology person walk[ed] past Plaintiff walking away from the room before noontime." ((*Id.* ¶ 48). According to the Complaint, Plaintiff never received any subsequent communications from Defendant regarding his application. (*Id.* ¶ 49). Plaintiff makes note of a recruiting company called "Source4Teachers" and its involvement in recruiting substitute teachers for Defendant. (Id. ¶¶ 51-52). Plaintiff also alleges that he was interviewed for several other New Jersey school district Spanish teacher positions between March and September 2016 and this is the only one where he was counseled to seek a substitute teacher position. (*Id.* ¶54).

Plaintiff in the second amended complaint brings the following causes of action against Trenton Board of Education, Michael Pettola and Sandra Iturbides, in their official and individual capacity: (1) Violation of the Americans with Disabilities Act; (2) violation of Title VII of the Civil Rights Act; (3) violation of Fourteenth Amendment due process and equal protection under 42 U.S.C. § 1983; (4) violation of the Civil Rights Act of 1991 § 105; and (5) violation of the Age Discrimination in Employment Act. In the second amended complaint, Plaintiff has added facts; but some of them are not sensible. For example, he states the following facts:

68. The resultant work-hour limitations brought on by the Affordable Care Act is evidence the substitute agency closely regulates substitute teachers.

69. Plaintiff pleads 'equitable tolling' due to the following paragraphs:

70. Defendant resorts to a proscribed hiring custom.

71. Plaintiff Edgewater Park, NJ storage unit suffers heavy wall damage shortly after his becoming a Trenton resident. (Exhibit 27)

72. Defendant March 2016 invitation for Plaintiff to reapply.

73. Plaintiff involvement in other Spanish teacher interviews between the dates of the Defendant 2016 interviews. (Exhibit 28)

> 74. Plaintiff 1992 automobile experiences mechanical failure May 2016 requiring towing and several days repair. (Exhibit 29)
>
> 75. Plaintiff early July 2016 need to address City of Trenton (at Trenton City Hall) housing ordinance issues (Trenton Municipal Code § 132-75 Facilities and fixtures) due to ongoing unkempt co-tenant, Ms. J. French. (Exhibit 30)
>
> 76. Plaintiff July 8, 2016 at Trenton residence vehicle hit-and-run issues, Trenton police case number 16-008161.
>
> 77. Plaintiff preparation for an Italian language teacher endorsement exam that takes place July 16, 2016 in White Plains, NY. (Exhibit 31)
>
> 78. Trenton landlord false accusations while supporting Plaintiff co-tenant Ms. J. French who collects one half utility payment from Plaintiff while accepting full energy assistance for PSE&G bills. (Exhibit 32)
>
> 79. Plaintiff recollection Trenton landlord getting upset stating, 'Plaintiff cannot even be a substitute teacher!'

(Compl., ¶¶ 68-79). Plaintiff also mentions that he filed an EEOC charge on October 21, 2016. (Id., ¶86). The majority of the new facts provided consist of conclusory statements, the relevancy of which is difficult to discern. For example, in paragraphs 139 to 152, Plaintiff comments on the racial, ethnic, and educational background of the faculty at the Trenton Puoblic Schools drawing conclusions on Trenton Board of Education's hiring policies which are based on his interpretation of personal research and some documents attached to the Complaint, but the facts do not set forth a plausible claim and are conclusory statements. These paragraphs read:

> 139. Plaintiff notes none of the minority male World Language Spanish teachers identifies as black Afro-American as indicated on the Applitrack EEO Voluntary Data sample page of the online and other dark complexion males are of national origin not of U.S. (Exhibit 54)
>
> 140. Further Trenton BOE Spanish teachers Mr. Fernandez, of Cuban origin, and Mr. Nicolas, of Panamanian origin, show internet information where they identify closely with their Hispanic origin and roots. (Exhibit 53)
> 141. Damariz Tirado, with Hispanic surname, is the Spanish teacher hired in 2016 by the Trenton BOE. (Exhibit 55)
>
> 142. Plaintiff notes in 2015 Trenton BOE hires Doris M. Capo as a Spanish teacher who is a 'Sub' 2015 at Trenton BOE, holds a BA degree with two years experience in contrast to Plaintiff who holds an MS Ed. In Modern Languages and has 4 years

4

NJ teacher experience (two years Willingboro, NJ, one year Essex County, NJ Vo/Tech and one year Elizabeth, NJ verifiable). (Exhibit 56)

143. Plaintiff also notes Trenton BOE does not staff a male Afro-American World Language teacher from 2006 to 2009 or 2010 to 2016 in contrast to the 2015 to 2016 NJ DOE Trenton BOE certified Black male staff at 31 %. (Exhibit 57) (Exhibit 48)

144. Plaintiff further notes the Trenton BOE World Language teacher hiring between 2010 and 2016 of 17 new World Language teacher hires 16 are Spanish teachers (and one male French teacher), 14 are of Hispanic surname, 15 are female and two are non-minority male (in contrast to the 2015 to 2016 NJ DOE Trenton BOE certified Hispanic female staff at 10.5%) (Exhibit 57)

145. In addition to Defendant interview practice custom of offering the Plaintiff Spanish teacher interviewee to enroll as a substitute teacher in lieu of a contracted position the Trenton BOE has no recent decade history of employing any African-American World Language teacher.

146. Plaintiff exhibit 24 Applitrack Trenton BOE applicant submitted applications page clearly shows the same Job ID: 2738 - WORLD LANGUAGE TEACHERS (Spanish) is applied for by Plaintiff late February as well as early August 2016 (this forms the basis of Plaintiff objection to Defendant repeated claim the 2016 Trenton BOE interviews do not refer to the identical Spanish teacher job offer).

147. Ashley Rodriguez who holds a BA degree (BA) and a NJ DOE Certificate of Eligibility (CE) (with now 1 year experience) according to the Asbury Park Press is hired March 2016 as a Trenton BOE Spanish teacher (previously employed at Wells Fargo 2 years 2014 to March 2016 and may be a hire for the Trenton BOE March 2016 interview) (Exhibit 5 8)

148. Damariz Tirado is the Trenton BOE Spanish teacher who begins Sept. 2016 has experience, Master's degree and is National Board certified. (Exhibit 55)

149. Board has experience granting paid extended leave of absence beyond 2 months duration for two 10 year + experience World languages teachers, Gavin Kramer from April 1 to June 30, 2014 and medical leave for Oman Lafrance March 22 thru May 5, 2014 (this may form the basis for Defendant reservation at considering Plaintiff for teacher hire) (Exhibit 59)

150. In addition to 2016 new teacher Ashley Rodriguez holding a BA at Trenton BOE hire, between 2010 and 2016 A. Wagar, M. Fromnic, M. Maldonado and A. Roberts also hold a BA at hire. (Exhibit 60)

151. Gaby R. Begley is Trenton BOE Spanish teacher appears at the Asbury Park Press NJ Teacher with CE, Alternate Route who does not appear on OPRA information received from Trenton Schools. (Exhibit 61)

Among other things, Plaintiff mentions that "none of the minority male World Language Spanish teachers identifies as black Afro-American as indicated on the Applitrak EEO Voluntary Data sample." (Id. ¶139). He also evidences that Spanish teachers Mr. Fernandez, of Cuban origin, and Mr. Nicolas, of Panamanian highlights their Hispanic origin and roots. (Id. ¶140). He further reviews the educational level of individuals hired by the Trenton Board of Education without setting forth a clear plain statement of his claim. (Id., 147)

At oral argument there was a discussion of the Complaint concerning which facts support of which claim. Plaintiff did not provide a clear answer and instead requested that this Court allow a further amendment.

### Legal Standard

Plaintiff in this matter is proceeding, pro se. "The obligation to liberally construe a pro se litigant's pleadings is well-established." *Higgs v. Atty. Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011) (citation omitted); *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)). "Courts are to construe complaints so 'as to do substantial justice,' Fed. R. Civ. P. 8(f), keeping in mind that pro se complaints in particular should be construed liberally." *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004). "Liberal construction does not, however, require the Court to credit a pro se plaintiff's 'bald assertions' or 'legal conclusions.'" *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). "[T]here are limits to [the courts'] . . . flexibility. . . . [P]ro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). "Even a pro se complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief." *Grohs*, 984 F. Supp. 2d at 282 (citing *Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981)).

On a motion to dismiss for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6), the Court is required to accept as true all allegations in the Complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non moving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 (3d Cir. 1994). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). While a court will accept well pleaded allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Iqbal*, 556 U.S. at 678-79; *see also Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir. 1997). A complaint should be dismissed only if the well-pleaded alleged facts, taken as true, fail to state a claim. *See In re Warfarin Sodium*, 214 F.3d 395, 397 98 (3d Cir. 2000). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. *Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir.), cert. denied, *Forbes v. Semerenko*, 531 U.S. 1149, 121 S. Ct. 1091 (2001). The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" *Kost v. Kozakewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Wright & Miller, Fed. Practice & Procedure: Civil 2d § 1357 at 340). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, . . . . Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact), . . . ." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65 (internal citations and quotations omitted).

## Analysis

Defendant brings the present motion to dismiss arguing that Plaintiff's second amended complaint again fails to state a claim upon which relief may be granted. The Court agrees. Although Plaintiff provided new facts, he does not properly indicate how these facts support his claims. Further, a large portion of said facts comprises conclusory, unsupported statements. The third amended Complaint, as the previous one, fails to state a clear plain statement of a cause of action.

**COUNT I (ADA)**

Plaintiff alleges that he was discriminated because of his disability since he appeared at his interview "utilizing an assistive walking device and known to possess a Social Security Ticket-to-Work," and as a result he was denied the Spanish teacher job; and in the alternative was offered the opportunity to apply for a job as a substitute teacher. (Compl. ¶155).

Under the ADA, to establish a prima facie case of unlawful discrimination, Plaintiff must demonstrate "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999) (internal quotation marks and citation omitted).

Plaintiff suffers from peripheral neuropathy, he was qualified for the position because he held a Spanish language teacher certification, and he interviewed for two positions with the Trenton Board of Education. As noted above, he was not hired, but the interviewers suggested that he apply for a substitute position. Plaintiff contends that the position remained open after his 2016 interviews were complete; however, this fact is of no avail. Plaintiff must show some discriminatory action, and here he has failed to allege that the position was filled by a non-disabled

candidate, which could presumably give rise to an inference of discrimination. *See Olson v. Gen. Elec. Astrospace*, 101 F.3d 947, 951 (3d Cir. 1996).

Plaintiff also alleges that he was not hired because he filed an EEOC Complaint, and he was not hired in retaliation of same; but Plaintiff alleges that he filed an EEOC complaint on October 21, 2016, two months after his last interview with the Trenton Board of Education.

Retaliation requires a plaintiff to show that (1) he engaged in a protected activity; (2) he suffered an adverse action; and (3) a causal link exists between the protected activity and the adverse action. *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997). The protected activity must occur before the alleged retaliation, which is not the case here. Since the EEOC charge was filed after the denials, there is no connection shown. Plaintiff mentions requesting information from Defendant, but not receiving an answer, occurred after the interview and before the EEOC charge was filed. (*See* Compl. ¶¶157-158). Overall, this count remains unclear and unsupported, and is dismissed.

**COUNT II (DISPARATE TREATMENT UNDER TITLE VII)**

Plaintiff's second claim is for violation of Title VII of the Civil Rights Act of 1964. In his Amended Complaint he states, "Plaintiff a black race, dark complexion, disabled male is discriminated by defendants Madeline Roman, Michael Pettola and Sandra Iturbides who dismiss[ed], on two separate interview occasions, his qualified employment status and relegate Plaintiff their custom, less desirable non professionally qualifies opportunity in violation of CRA 1964." (Amend. Compl. 161).

To assert a prima facie case of employment discrimination, Plaintiff must show "(1) the plaintiff belongs to a protected class; (2) he/she was qualified for the position; (3) he/she was subject to an adverse employment action despite being qualified; and (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to the plaintiff's to fill the position." *Sarullo v. United States Postal Serv.*,

9

352 F.3d 789, 797 (3d Cir. 2003). "The central focus of the inquiry in a case such as this is always whether the employer is treating 'some people less favorably than others because of their race, color, religion, sex, or national origin.'" *Pivirotto v. Innovative Sys.*, 191 F.3d 344, 352 (3d Cir. 1999) (citation omitted).

Plaintiff argues in his opposition that he was subject to disparate treatment. He supports that, as stated in the Complaint, the position remained open after his interview. Paragraph 146 of the Complaint states "Job ID: 2738- World Language teachers (Spanish) is applied for by Plaintiff late February as well as early August 2016." Plaintiff provides no evidence that the job he applied to in August was identical to the one he applied in March. Additionally, in his complaint, Plaintiff alleges that Damariz Tirado was hired in September 2016, it is unclear which position he was hired to fill. (Compl. ¶148). Plaintiff appears to argue that the Trenton Board of Education showed a hiring preference for female and Latino Spanish teachers. This contention is not supported by the data provided. The Board of Education's minutes, attached to the Amend Compl. as Ex. 55_2, from September 29, 2016, reflect that Gaby Begley and Nivin Mikhail were also hired on September 1, 2016, defeating Plaintiff's allegation that the Board favored Latino and female applicants. Plaintiff further contends that the Trenton Board of Education did not hire any male World Language Teachers from 2006 to 2009 and from 2010 to 2016 but does not provide sufficient evidence to support this statement (Compl. ¶144). Neither party disputes that Plaintiff is a member of a protected class nor that he was qualified for the position. However, as discussed above, Plaintiff fails to demonstrate that similarly situated individuals were treated more favorably or that the specific position he applied for remained open. He provides an overview of the hired teachers' qualifications, which standing alone are not sufficient to support a pattern of discrimination. Ultimately, "the employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 259 (1981).

10

Since Plaintiff has failed to allege any facts upon which the Court could infer discriminatory action, Count II is dismissed.

**COUNT III (42 U.S.C. 1983)**

As best the Court understands, Plaintiff claims Defendants have embraced a custom or practice of discriminating against black and disabled individuals. (Compl. ¶¶ 138-39). However, Plaintiff mentions due process violations (Compl. ¶164). Plaintiff's opposition clarifies that the claim is based on Defendant's "repeated rejection of Plaintiff['s] qualifications as a Spanish teacher applicant may be viewed as disparate impact by Plaintiff protected class given the March 2016 (by Mr. Pettola and Ms. Roman) and August 2016 (by Ms. Iturbides)."

To sustain a claim under Section 1983, a plaintiff must demonstrate: "(1) he or she is in a protected class; (2) the defendant acted under the color of state law; and (3) the defendant treated plaintiff differently because of his race or religion." *See Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005); *Keenan v. City of Philadelphia*, 983 F.2d 459, 465 (3d Cir. 1992). To satisfy the third prong, a plaintiff "must demonstrate that they received different treatment from that received by other individuals similarly situated." *Keenan*, 983 F.2d at 465 (internal quotation marks and citation omitted).

The pleadings here are devoid of facts suggesting that the Trenton Board of Education maintained a custom of discriminating against African-American or male job applicants. Plaintiff alleges discriminatory practices by mentioning the school's hiring practices and then compares it to his review of records (attached to amended complaint). This theory makes little sense, and it is insufficient to support a claim.

This claim appears to extend liability to the municipality since Plaintiff is alleging a constitutional violation resulting from an official custom and practice by the Trenton Board of Education. It is well-established that a municipality cannot be held liable under Section 1983 based on a respondeat superior theory. *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658,

11

691 (1978) ("a municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory"). However, a municipality can be sued directly if the constitutional tort was caused by a municipal custom or policy. *Id.* at 690-91. A government entity may be held liable for a constitutional violation if the plaintiff can "identify a policy or custom of the entity that caused the constitutional violation." *A.M. ex rel. J.M.K v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 580 (3d Cir. 2004). The policy must be "officially adopted and promulgated by that body's officers" or made by "those whose edicts or acts may fairly be said to represent official policy." *Monell*, 436 U.S. at 690, 694. A custom can be demonstrated through "a given course of conduct, although not specifically endorsed or authorized by law . . . [that] is so well-settled and permanent as virtually to constitute law." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). However, a single isolated incident will not suffice, unless the custom can be demonstrated by other means like "proof of knowledge and acquiescence." *Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir. 1989). "Proof only of the existence of an unlawful policy or custom is not sufficient, however, to impose municipal liability under section 1983. A plaintiff must also establish that the government policy or custom was the proximate cause of the injuries sustained." *See Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996) (citation omitted); *see also Carswell v. Borough of Homestead*, 381 F.3d 235, 244 (3d Cir. 2004).

Here, Plaintiff's second amended complaint is devoid of any allegations that Defendants deprived him of any protected right, based on municipal policy or custom of discrimination. His statement on the racial and gender composition of the faculty and the hiring practices of the Trenton Board of Education are conclusory and unsupported by sufficient evidence. Therefore, Count III is dismissed.

## **COUNT IV (DISPARATE IMPACT)**

Under Count IV, Plaintiff alleges that Defendants "promote[] disparate impact by proposing an undesirable employment offer." (Compl. at ¶ 168). Defendants seek dismissal of this Count, since Plaintiff fails to allege disparate impact discrimination. The Court agrees.

42 U.S.C. § 2000e-2(k) proscribes employments practices that cause disparate impact based on race, color, religion, sex or national origin. "In order to establish a prima facie case of disparate impact discrimination, a plaintiff is required to demonstrate that application of a facially neutral standard has resulted in a significantly discriminatory hiring pattern." *Newark Branch, NAACP v. Harrison*, 940 F.2d 792, 798 (3d Cir. 1991). "A comparison between the racial composition of those qualified persons in the relevant labor market and that of those in the jobs at issue typically 'forms the proper basis for the initial inquiry in a disparate impact case.'" *Id.* (quoting *Wards Cove Packing Co., Inc. v. Antonio*, 490 U.S. 642, 659 (1989)).

Here, Plaintiff plainly fails to plead a prima facie claim for disparate impact under Title VII. Although he uses the phrase "disparate impact," Plaintiff fails to identify any specific policy employed by Defendants which resulted in a discriminatory hiring pattern. Moreover, the "statistics" provided by Plaintiff are insufficient to support his assertion that disparate impact discrimination exists. *See Newark Branch, NAACP*, 940 F.2d at 798 ("The evidence in these 'disparate impact' cases usually focuses on statistical disparities." (internal quotation marks and citation omitted). As such, because Plaintiff fails to satisfy the necessary elements of a disparate impact claim, Count IV is dismissed.

## **COUNT V (ADEA)**

Finally, Defendants seek dismissal of Count V since Plaintiff fails to demonstrate that age played a role in Defendants' employment process. The Court agrees.

"The ADEA prohibits age discrimination in employment against any person over age forty." *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 330 (3d Cir. 1995). To sustain a claim

under ADEA, Plaintiff must show "(1) is over 40; (2) is qualified for the position in question; (3) suffered an adverse employment decision; and (4) was replaced by a sufficiently younger person to permit an inference of age discrimination." *Id.*

Fatal to Plaintiff's second amended complaint is the fact that he does not allege that another, younger, individual was hired for the same position. In fact, when reviewing the motion record, there is nothing to suggest that age played a significant factor in Defendants' hiring process. As such, because Plaintiff does not to satisfy the necessary elements to sustain an ADEA cause of action, Count V is dismissed.

**CONCLUSION**

The Court notes that the Third Circuit has held that "[a] district court should not dismiss a pro se complaint without allowing the plaintiff leave to amend unless amendment would be futile." *Hill v. Rozum*, 447 F. Appx. 289, 290 (3d Cir. 2011) (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). Plaintiff has had multiple chances to remediate the insufficiency of his complaint but once again has failed to do so. Plaintiff filed a motion to amend his complaint on February 9, 2018, after a hearing for the motion to dismiss was held. (ECF No. 19). At this time the Court denies said motion finding that further amendments would be futile. *See Hoffenberg v. Bumb*, 446 F. App'x 394, 399 (3d Cir. 2011); *Rhett v. N.J. State Superior Court*, 260 F. App'x 513, 516 (3d Cir. 2008).

ORDER

This matter, having been brought before the Court by Defendants motion to Dismiss Plaintiff's complaint [ECF No. 24], and the Court having considered the briefs and submissions of the parties; and having heard oral argument; and for good cause having been shown;

IT IS on this 27th day of February, 2018;

ORDERED that Defendants' motion to dismiss Plaintiff's second amended complaint (ECF No. 24) is GRANTED; and it is further,

ORDERED that Plaintiff's motion to amend the complaint (ECF No. 29) is DENIED; and It is further,

ORDERED that this matter is dismissed with prejudice.

<u>*s/Peter G. Sheridan*</u>
PETER G. SHERIDAN, U.S.D.J.